**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **AMERICAN PATENTS LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:19-cv-764-ALM** |
| **D-LINK CORPORATION,** | |
| **Defendant.** | |

**D-LINK CORPORATION'S RULE 12(b)(2)
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL AND PROCEDURAL OVERVIEW ...................................................... 2

        A.      D-Link Corporation's Lack Of Connection To The State of Texas And The
                United States ................................................................................................2

        B.      D-Link Corporation And D-Link Systems Are Separate Legal Entities ...............4

        C.      Subject Litigation Stems From The Common Name "D-Link" ............................5

III.    ARGUMENT ........................................................................................................ 6

        A.      The Court Lacks Personal Jurisdiction Over D-Link Corporation .........................6

                1.      The Court Lacks General Jurisdiction Over D-Link Corporation ..............7

                2.      The Court Lacks Specific Jurisdiction Over D-Link Corporation..............9

        B.      Exercising Jurisdiction Over D-Link Corporation Does Not Comport With Due
                Process ........................................................................................................13

IV.     CONCLUSION.................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.,*
    689 F.3d 1358 (Fed. Cir. 2012) ............................................................ 8, 11, 14

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995)................................................................................ 8

*Asahi Metal Indus. Co. v. Sup. Ct. Of Cal.,*
    480 U.S. 102 (1987) ................................................................... 15, 16, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................ 11, 13

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................ 14

*Burnham V. Superior Court,*
    495 U.S. 604 (1990) .................................................................................. 8

*Celgard, LLC v. SK Innovation Co.,*
    792 F.3d 1373 (Fed. Cir. 2015) ........................................................... 11, 14

*Daimler AG v. Bauman,*
    571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) .................................. 9, 10, 11, 15

*Freudensprung v. Offshore Tech. Servs., Inc.,*
    379 F.3d 327 (5th Cir. 2004) .............................................................. 14

*Goodyear Dunlap Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) .......................................................................... 9, 11

*Helicopteros Nacionales de Colombia,*
    *S.A. v. Hall*, 466 U.S. 408 (1984) ….......................................................... 14

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) .......................................................................... 8, 9, 15

*J. Mcintyre Machinery, Ltd. v. Nicastro,*
    564 U.S. 873 (2011) ......................................................................... 15, 16

*Johnston v. Multidata Sys. Int'l Corp.,*
    523 F.3d 602 (5th Cir. 2008) ................................................................ 11

*Med. Sols., Inc. v. C Change Surgical LLC,*
    541 F.3d 1136 (Fed. Cir. 2008) ........................................... 8

*Milliken v. Meyer*,
    311 U.S. 457 (1940) ........................................... 8

*Monkton Ins. Servs., Ltd. v. Ritter,*
    768 F.3d 429 (5th Cir. 2014) ........................................... 10

*QR Spex, Inc. v. Motorola, Inc.,*
    507 F. Supp. 2d 650 (E.D. Tex. 2007) ........................................... 8

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,*
    563F.3d 1285 (Fed. Cir. 2009) ........................................... 9

*Walden v. Fiore,*
    571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ........................................... 11

*Zoch II v. Daimler, AG,*
    No. 6:16-CV-00057-RWS, 2017 WL 2903264 (E.D. Tex. May 16, 2017) ...................... 9

Defendant, D-Link Corporation, files this Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and alleges:

## I.   <u>INTRODUCTION</u>

No personal jurisdiction exists over Defendant D-Link Corporation because Defendant has no connection to the allegedly infringing products and thus no connection to Texas nor the United States—this is a case of conflated identity. It would offend due process to allow Plaintiff to haul D-Link Corporation, a Taiwanese company, into a Texas court on the sole basis that the accused products contain the phrase "D-Link" in their name, when the reality is the proper defendant, D-Link *Systems*, is headquartered in California and subject to jurisdiction there.

Specifically, Defendant D-Link Corporation is a Taiwanese corporation whose principal place of business is located in Taiwan.  D-Link Corporation has never offered, sold or shipped a product, accused in this litigation or otherwise, to anyone in the State of Texas, and lacks the requisite contacts with Texas and the United States for the exercise of jurisdiction over it.

D-Link Corporation has no presence in, or systematic and continuous contacts with, the State of Texas or the United States generally to support the exercise of general jurisdiction. Additionally, D-Link Corporation is not subject to specific jurisdiction as it does not have the necessary minimum contacts with Texas or the United States and plaintiff's claims do not arise out of or relate to any activity of D-Link Corporation's in either forum.  Significantly, the products at issue in the subject litigation (i.e., identified in the complaint as "D-Link Wireless AC1200 MU-MIMO Wi-Fi Gigabit Router family of products") are not made, sold, exported, imported or distributed by D-Link Corporation.  D-Link Corporation does not own and has never held title to any of the accused products that were sold or imported into the U.S.  In other words, D-Link Corporation is not even arguably in the stream of commerce for any of the U.S. sold or imported

products that are in this case.[1]   In fact, for at least a decade, D-Link Corporation has not made, sold, distributed, shipped, imported or exported any product to the U.S.  Nor has it conducted business in the U.S.

Finally, the exercise of jurisdiction over D-Link Corporation in Texas would be unfair, unjust, and unreasonable.  D-Link Corporation maintains no offices, corporate records, or employees in Texas and D-Link Corporation's business activities occur only in Taiwan. Accordingly, requiring D-Link Corporation to defend this case, under a foreign legal system, thousands of miles from home, for an accused product to which it has no part in selling in or to the U.S. would violate the Due Process Clause (especially when there is a proper entity located in California).  Therefore, the claims against D-Link Corporation should be dismissed.

## II.    FACTUAL AND PROCEDURAL OVERVIEW

### A.    D-Link Corporation's Lack Of Connection To The State of Texas And The United States

Defendant D-Link Corporation is a Taiwanese corporation with its principal place of business in Taipei City, Taiwan.  (Declaration of Deborah Lin In Support Of Defendant D-Link Corporation's Motion To Dismiss ("Decl.") ¶ 2.)  D-Link Corporation sells products domestically in Taiwan only and does not sell any products in or to the United States or any other foreign countries.  (Decl. ¶ 3.)  D-Link Corporation does not make or sell products for import into the U.S. Market by anyone.  Indeed, D-Link Corporation does not manufacture any of its products but instead purchases the products from third-party vendors and manufacturers in Asia who make D-

---

[1]    Sales of D-Link branded merchandise are handled by D-Link Systems, Inc. of Fountain Valley, California.  The URL and website of "http://us.dlink.com," the website Plaintiff relies on in the Complaint, is owned and operated by D-Link Systems, Inc. Defendant is not a supplier (either directly or indirectly) of the Accused Products to D-Link Systems.  Prior to filing this motion, Defendant notified Plaintiff that it had sued the wrong entity, but Plaintiff refused to take any action unless and until Defendant filed this motion.

Link brand products that D-Link Corporation buys to sell domestically in Taiwan.  (Decl. ¶ 4.)

The products at issue in the subject litigation (i.e., identified in the complaint as "D-Link Wireless

AC1200 MU-MIMO Wi-Fi Gigabit Router family of products") are not made, sold, exported,

imported or distributed by D-Link Corporation.  (Decl. ¶ 5.)  D-Link Corporation does not own

and has never held title to any accused products that are sold or imported into the U.S.  (Decl. ¶

5.)  U.S. sales of D-Link branded products are handled by D-Link Systems, Inc. ("D-Link

Systems"), a separate and corporation located in Fountain Valley, California.  (Decl. ¶ 5.)  In fact,

D-Link Corporation has not shipped any goods to the U.S. since 2008.  (Decl. ¶ 11.)  Any D-Link

brand product sold or imported into the U.S. was not made, sold or shipped by D-Link Corporation

because D-Link Corporation does not make any product for sale or shipment to U.S. customers.

(Decl. ¶ 4.)  D-Link Corporation only conducts its own business domestically in Taiwan and

purchases the products from 3rd party vendors or manufacturers in Asia who make D-Link brand

products for sale to its customers in Taiwan.  (Decl. ¶ 4.)

D-Link Corporation has never been a Texas corporation, has never applied for nor held a

certificate or other license to do business in Texas, and does not consent to jurisdiction in Texas.

(Decl. ¶ 12.)  D-Link Corporation is not a parent corporation to any Texas corporation, has no

subsidiary corporations in Texas, and has never authorized a distributor, supplier, retailer or

reseller in Texas for its products.  (Decl. ¶ 12.)  D-Link Corporation has never conducted business

in Texas, has never had any customer or solicited business in Texas, and has never sold or shipped

any products to a resident of Texas.  (Decl. ¶ 13.)  D-Link Corporation does not own, rent, lease,

or possess any real or personal property in Texas; has never been listed in any address or telephone

directory in Texas; has never maintained an address or telephone number in Texas; has no

inventory or other assets in Texas; has never had a bank account in Texas; and does not maintain

corporate records in Texas.  (Decl. ¶ 14.)  D-Link Corporation has never had an office or place of business in Texas and has never maintained any manufacturing facilities or facilities in Texas; and does not have any employee or agent in Texas.  (Decl. ¶ 15.)  D-Link Corporation has no registered agent in Texas for receiving service of process.  (Decl. ¶ 15.)  D-Link Corporation has never designed nor manufactured any products in Texas; has never targeted its products at Texas residents; and does not pay taxes to any government entity in Texas or have any legal obligation to do so.  (Decl. ¶ 16.)

D-Link Corporation does not sell or import products into the United States and has not sold any products into the United States since May 2006.  (Decl. ¶ 17.)  D-Link Corporation does not have any offices, warehouses, bank accounts, contracts, or customers in the United States.  (Decl. ¶ 18.)  D-Link Corporation does not own, rent, lease, or possess any real or personal property in the United States.  (Decl. ¶ 18.)  D-Link Corporation does not otherwise conduct any sales activities in the United States.  (Decl. ¶ 18.)  D-Link Corporation does not hold a certificate or other license to do business in the United States; and does not have any employees in the United States.  (Decl. ¶ 19.)  D-Link Corporation does not advertise in or market its products to the United States.  (Decl. ¶ 20.)  D-Link Corporation does not target the products it sells in Taiwan at or to residents of the United States.  (Decl. ¶ 20.)  For example, D-Link Corporation operates a website, www.dlinktw.com.tw, directed to Taiwanese consumers and consumers outside Taiwan cannot purchase products from the website, as the purchased goods can only be shipped to an address in Taiwan.  (Decl. ¶ 20.)

## B.    D-Link Corporation And D-Link Systems Are Separate Legal Entities

D-Link Systems is a corporation organized under the laws of the State of California with its corporate headquarters in Fountain Valley in southern California.  (Decl. ¶ 6.)  D-Link Systems

conducts its business in the United States. D-Link Systems sells D-Link brand products in the U.S. and owns the URL and website of http://us.dlink.com.  Although it is a subsidiary of D-Link Corporation, D-Link Systems is a separate, distinct, and independent business that makes its own corporate decisions.  (Decl. ¶¶ 6, 8.)  D-Link Corporation is not involved in nor has any control of D-Link Systems' daily operations or internal affairs.  (Decl. ¶¶ 8, 9.)  D-Link Corporation and D-Link Systems maintain separate management and accounting systems, separate team of employees, and separate office spaces.  (Decl. ¶ 9.)  D-Link Systems has no authority to conduct business on behalf of D-Link Corporation and is not authorized to accept service of process for D-Link Corporation.  (Decl. ¶ 10.)  Moreover, D-Link Corporation does not manufacture any of the products that D-Link Systems sells in the United States, does not ship any goods to D-Link Systems (or any other person or entity in the United States), and has not shipped any goods to D-Link Systems for sale or other purpose in the United States since 2006 and 2008 respectively. (Decl. ¶¶ 7, 11.)  Instead, D-Link Systems selects its own products for purchases from vendors or manufacturers other than D-Link Corporation.  (Decl. ¶ 7.)

### C.    Subject Litigation Stems From The Common Name "D-Link"

The present suit began on October 18, 2019, when plaintiff American Patents LLC, ("Plaintiff") filed suit against D-Link Corporation alleging infringement of U.S. Patent Nos. 7,088,782; 7,310,304; and 7,706,458 (collectively, "the patents-in-suit").  The patents-in-suit allegedly "pertain to communications networks and other technology used in 'smart' devices such as smartphones, smart TVs, and smart appliances" and "relate[] to Multi-Input, Multi-Output (MIMO) technology".  (Complaint ¶¶ 6, 8.)  Plaintiff's claim against D-Link Corporation is based on the product brand name of "D-Link" from which Plaintiff mistakenly alleges a connection between D-Link Corporation and the "D-Link Wireless AC1200 MU-MIMO Wi-Fi Gigabit Router family of products that include 802.11ac and/or LTE capabilities ('accused products')."  (*See, e.g.,*

Complaint at ¶ 11).  D-Link Corporation does not own and has never held title to any of the accused products that are sold or imported into the U.S.  (Decl. ¶ 5.)   The sales of D-Link branded products in the U.S. are handled by D-Link Systems, a separate and distinct corporation located in Fountain Valley, California.  (Decl. ¶ 5.)

## III.    ARGUMENT

### A.     The Court Lacks Personal Jurisdiction Over D-Link Corporation

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move for dismissal based on lack of personal jurisdiction.  A judgment rendered by a court lacking personal jurisdiction violates constitutional requirements of due process of law and is both void and subject to direct attack (appeal) or collateral attack (separate lawsuit or defense to enforcement proceeding).  *Burnham v. Superior Court*, 495 U.S. 604, 608-609 (1990).

A federal court may exercise personal jurisdiction over a non-resident defendant in a patent infringement suit: (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause.  *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008); *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995) (clarifying that the same due process analysis and case law under the Fourteenth Amendment applies to federal question patent cases).  "Because the long-arm statute in Texas is co-extensive with federal limits on personal jurisdiction, the issue here is whether sufficient contacts exist between [D-Link Corporation] and the State of Texas to establish personal jurisdiction under the federal due-process clause."  *QR Spex*, *Inc. v. Motorola, Inc.,* 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007).

Under federal due process analysis, a court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The minimum

contacts necessary for a court to exercise personal jurisdiction over a defendant may be established through either general or specific jurisdiction.  *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012).

Rule 4(k)(2).  If a defendant does not have sufficient contacts with the forum state or any other state, a court may exercise personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)") as long as the defendant has sufficient contacts with the United States as a whole.[2]  Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009).  "The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* at 1295.

### 1.     The Court Lacks General Jurisdiction Over D-Link Corporation

General jurisdiction arises when a non-resident defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit...*on causes of action arising from dealings entirely distinct from those activities*." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318) (emphasis in original).  To establish general jurisdiction over a foreign corporation, the plaintiff must show that "the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it]

---

[2]     Fed. R. Civ. P. 4(k)(2) provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

essentially at home in the forum State.'" *Daimler*, 571 U.S. at 122 (quoting *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and the principal place of business are 'paradig[m]...bases for general jurisdiction'." *Id.* at 137 (internal citations omitted) (quoting *Goodyear*, 564 U.S. at 924); *see also*, *Zoch II v. Daimler, AG*, No. 6:16-CV-00057-RWS, 2017 WL 2903264, at *3 (E.D. Tex. May 16, 2017), report and recommendation adopted, 2017 WL 9935519 (E.D. Tex. July 5, 2017) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)) ("In light of *Daimler*, the Fifth Circuit has observed that as a matter of course, 'it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'").

Texas.  Defendant D-Link Corporation is a Taiwanese corporation that does not have the continuous or systematic contacts with the State of Texas necessary to establish general jurisdiction.  D-Link Corporation is not incorporated or licensed to do business in Texas (Decl. ¶ 12); maintains no offices in Texas and has no employees in the state (Decl. ¶ 15 ); does not own, rent, lease, or possess any real or personal property in Texas (Decl. ¶ 14); has never paid taxes to any governmental entity in Texas (Decl. ¶ 16); has never had a bank account in Texas (Decl. ¶ 14.); has never been listed in any address or telephone directory in Texas or maintained an address or telephone number in Texas.  (Decl. ¶ 14.)  Clearly, D-Link Corporation is not "at home" in Texas for purposes of general jurisdiction.  *See Daimler*, 571 U.S. at 122, 133 n.11.

United States.  Similarly, D-Link Corporation does not have the continuous or systematic contacts with the United States as a whole necessary to establish general jurisdiction pursuant to Rule 4(k)(2).  D-Link Corporation does not sell or import products into the United States and has not sold any products into the United States since May 2006.  (Decl. ¶ 17.)  D-Link Corporation does not have any offices, warehouses, bank accounts, contracts, or customers in the United States.

(Decl. ¶ 18.)  D-Link Corporation does not own, rent, lease, or possess any real or personal property in the United States.  (Decl. ¶ 18.)  D-Link Corporation does not otherwise conduct any sales activities in the United States.  (Decl. ¶ 18.)  D-Link Corporation does not hold a certificate or other license to do business in the United States; and does not have any employees in the United States. (Decl. ¶ 19.)  D-Link Corporation does not advertise in or market its products to the United States.  (Decl. ¶ 20.)  D-Link Corporation does not target the products it sells in Taiwan at or to residents of the United States.  (Decl. ¶ 20.)  For example, D-Link Corporation operates a website, www.dlinktw.com.tw, directed to Taiwanese consumers and consumers outside Taiwan cannot purchase products from the website as the purchased goods can only be shipped to an address in Taiwan.  (Decl. ¶ 20.)

The Complaint is completely lacking the factual allegations necessary to support general jurisdiction over D-Link Corporation in Texas, including general jurisdiction under Rule 4(k)(2) with the United States as the relevant forum.  *See Daimler*, 571 U.S. at 122, 133 n.11.  Despite alleging that "D-Link has done and continues to do business in Texas" (Complaint ¶ 4), Plaintiff fails to allege any specific facts to meet its burden, providing instead only "[t]hreadbare recitals of the elements of [the] cause[s] of action." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

## 2.     The Court Lacks Specific Jurisdiction Over D-Link Corporation

Specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (re-affirming that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial

connection with the forum State").  "Specific jurisdiction entails a three-part test: (1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG*, 689 F.3d at 1361. "The plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.*

As explained above, Plaintiff's claims do not arise out of or relate to any activity of D-Link Corporation's in Texas or the United States such that specific jurisdiction can be established because (1) D-Link Corporation has *no connection* to the accused products; and (2) the Complaint makes *no concrete allegations as to the location* of any allegedly infringing acts.  To the first point, the accused products in the subject litigation are not made, sold, exported, imported or distributed by D-Link Corporation. (Decl. ¶ 5.)  D-Link Corporation does not own and has never held title to any such products sold or imported into the U.S.  (Decl. ¶ 5.)  Instead, such products may be associated with D-Link Systems, a separate and distinct corporation located in Fountain Valley, California.[3]  (Decl. ¶ 5.)

To the second point, Plaintiff's Complaint only uses boilerplate language to allege direct infringement of the patents-in-suit and fails to identify any specific act of use, manufacture, sales, offers for sale, or importation by D-Link Corporation within Texas—or even in the United States. (*See, e.g.*, Complaint, Counts I-III).  For example, the allegations for Count I of the Complaint provide only that:

11. D-Link *used products and/or systems* including, for example, its D-Link Wireless

---

[3]    *See supra,* Section II.B.

AC1200 MU-MIMO Wi-Fi Gigabit Router family of products that include 802.11ac and/or LTE capabilities ("accused products"):  [screen shot showing accused product information]

12. *By doing so*, D-Link has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 30 of the '782 Patent. D-Link's infringement in this regard is ongoing.

13. D-Link has infringed the '782 Patent *by using the accused products* and thereby practicing a method for synchronizing a Multi-Input Multi-Output (MIMO) Orthogonal Frequency Division Multiplexing (OFDM) system … [screen shots from technical sources]

Complaint ¶¶ 11-13 (emphases added).  However, Plaintiff fails to allege any facts as to how, when, or where D-Link Corporation "used" the accused products and/or systems in an infringing manner.

Plaintiff also alleges that D-Link Corporation has indirectly infringed the patents-in-suit through contributory infringement and inducement. (*See, e.g.,* Complaint ¶¶ 50-70.)  However, Plaintiff again fails to identify any specific actions of contribution or inducement by D-Link Corporation in Texas or elsewhere within the United States.  For example, Plaintiff's indirect infringement allegations include that

51. D-Link took active steps, directly and/or through *contractual relationships* with others, with the specific intent to cause them *to use* the accused products in a manner that infringes one or more claims of the patents-in-suit, including, for example, [listing of select claims].

52. Such steps by D-Link included, among other things, *advising or directing* customers and end-users to use the accused products in an infringing manner; *advertising and promoting* the use of the accused products in an infringing manner; and/or *distributing instructions* that guide users to use the accused products in an infringing manner.

55. D-Link has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) the [patents-in-suit] *by importing, selling or offering* to sell the accused products.

57. D-Link *directs or controls* the making of accused products and their shipment to the United States, *using established distribution channels*, for sale in Texas and elsewhere within the United States.

58. D-Link *directs or controls* the sale of the accused products into *established United States distribution channels*, including sales to nationwide retailers."

Complaint ¶¶ 50, 51, 52, 55, 57, 58 (emphases added). Notably, in its allegations, Plaintiff fails to identify any specific acts of "using" (*id.* ¶ 50); any specific "contractual relationships" (*id.* ¶ 51); any specific acts of "advising or directing…advertising and promoting… and/or distributing instructions" (*id.* ¶ 52); any specific acts of "importing, selling or offering to sell" (*id.* ¶ 55); any specific acts of "direct[ing] or control[ing]" (*id.* ¶¶ 57, 58); and any specific "established distribution channels" (U.S. or otherwise). (*Id.* ¶¶ 57, 58.)

Plaintiff offers only "[t]hreadbare recitals of the elements of [the] cause[s] of action," insufficient to support a showing of specific jurisdiction. *See Ashcroft*, 556 U.S. at 678. These "threadbare" allegations fall hopelessly short of satisfying Plaintiff's "burden of affirmatively establishing the first two elements of the due process requirement." *See Celgard*, 792 F.3d at 1378. Plaintiff fails to establish that "(1) [D-Link Corporation] purposefully directs activities at the forum's residents; [and] (2) [] the claim arises out of or relates to those activities." *See AFTG-TG*, 689 F.3d at 1361. And Plaintiff cannot meet its burden here because the litigation does not result from alleged injuries that arise out of or relate to activities D-Link Corporation purposefully directed at residents of the forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Here, there is no "relationship between [D-Link Corporation], the forum [whether Texas or the United States], and the litigation" because D-Link Corporation has *no connection* with the accused product and therefore has not knowingly directed any sales of the accused product at Texas or the United States generally. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (quoting *Burger King*, 471 U.S. at 474). Accordingly, D-Link Corporation is not subject

to specific jurisdiction in Texas, including specific jurisdiction under Rule 4(k)(2) with the United States as the relevant forum.

In sum, Plaintiff simply does not plead any *specific facts* to support its conclusory jurisdictional allegation that

> (i) D-Link has done and continues to do business in Texas; and (ii) D-Link has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein.

Complaint ¶ 4.  In fact, the Complaint does not identify *any* specific acts of D-Link Corporation in Texas or the United States.  (*See* Complaint generally.)  And, again, Plaintiff cannot legitimately allege such facts because D-Link Corporation has no "presence" in either forum and *no connection* with the accused products.  (Decl. ¶¶ 5, 12-20.)

## B.   Exercising Jurisdiction Over D-Link Corporation Does Not Comport With Due Process

Even when general or specific jurisdiction exists, courts must not exercise jurisdiction over a defendant when doing so would offend traditional notions of fair play and substantial justice. *Int'l Shoe.*, 326 U.S. at 316 (citation omitted).  On this issue, the courts examine: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental social policies.  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113 (1987).

Even if the necessary minimum contacts had existed between D-Link Corporation and Texas or the United States (which they do not), consideration of fair play and substantial justice would not permit this Court to assert jurisdiction over D-Link Corporation in view of recent

Supreme Court jurisdictional cases involving foreign product manufacturers.  *See e.g., Daimler*, 571 U.S. at 142 ("Considerations of international rapport thus reinforce our determination that subjecting [the defendant] to the general jurisdiction of courts in California would not accord with the "fair play and substantial justice" due process demands."); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 892 (2011) ("Further, the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain.") (Breyer, J., concurring); *Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  The Court's same reasoning applies here.  D-Link Corporation is a Taiwan corporation with its headquarters in Taiwan and no presence in Texas or the United States.  The numerous burdens on the company to litigate this case in Texas would be severe.  Defending this case in Texas would require D-Link Corporation personnel to travel to Texas as the lawsuit progresses, to exchange documents (most of which are in Chinese) and other evidence with the other party and attorneys in Texas, and to attend the trial of this action in Texas.  (Decl. ¶  21.)  The company's headquarters in Taipei City, Taiwan, is over 7700 miles from the federal district courts in the Eastern District of Texas.  (*Id.*)  Because of this distance, it would be inconvenient, burdensome, and financially expensive for the company to litigate this case in that court.  (*Id.*)  There are no direct flights between Tai-Chung City, Taiwan, and Sherman, Texas.  (*Id.*)  The flight time between Taiwan Taoyuan International Airport (which is more than 85 miles from Tai-Chung City, Taiwan) and Dallas/Fort Worth International Airport (over 60 miles from Paul Brown United States Courthouse, Sherman, Texas) ranges from 18 to 26 hours and the airfare ranges from USD $3900 and possibly up to USD $6500 for business class.  (*Id.*)  The difficulties of travel, communications, and the defense of this lawsuit

are further complicated by the fact the two locations are fourteen (14) hour time zones apart.  (*Id.*) These facts alone warrant against jurisdiction.  *See J. McIntyre*, 564 U.S. at 892; *Asahi*, 480 U.S. at 114.

Further, as D-Link Corporation has no connection with the accused product, the plaintiff's interest in obtaining relief against *D-Link Corporation* in *Texas* is not compelling.  The accused products (i.e., identified in the complaint as "D-Link Wireless AC1200 MU-MIMO Wi-Fi Gigabit Router family of products") are not made, sold, exported, imported or distributed by D-Link Corporation.  (Decl. ¶ 5.)  D-Link Corporation does not own and has never held title to any accused products sold or imported into the U.S.  (Decl. ¶ 5.)  U.S. sales of D-Link branded products are handled by D-Link Systems, a separate and distinct corporation located in Fountain Valley, California and subject to jurisdiction there.  (Decl. ¶ 5.)  Moreover, as the technology disclosed by the patents-in-suit was developed by personnel at Georgia Institute of Technology in Atlanta, Georgia (Complaint ¶¶ 6-7), Plaintiff's evidence pertaining to the patents-in-suit was likely generated and maintained in Georgia, not Texas.

In short, the exercise of jurisdiction over D-Link Corporation would be unfair, unjust, and unreasonable, and will not be "consistent with traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 116.

## IV.   CONCLUSION

For at least the foregoing reasons, D-Link Corporation respectfully requests that the Court dismiss the present action.  D-Link Corporation contends that, as a foreign corporation with no "at home" presence in Texas or the United States and who has *no connection* with the accused products, it lacks the "minimum contacts" with Texas and the United States required to subject it to this Court's jurisdiction.

Dated: February 10, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
    David M. Hoffman
    Texas Bar No. 24046084
    hoffman@fr.com
    111 Congress Avenue, Suite 810
    Austin, TX 78701
    Tel: (512) 472-5070
    Fax: (512) 320-8935

    LAW OFFICES OF S.J. CHRISTINE YANG

    Christine Yang (to be admitted *pro hac vice*)
    chrisyang@sjclawpc.com
    17220 Newhope Street, Suite 101
    Fountain Valley, CA 92708
    Tel: (714) 641-4022
    Fax: (714) 641-2082

    **COUNSEL FOR DEFENDANT,**
    **D-LINK CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on  a true and correct copy of the foregoing document was served on February 10, 2020 on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ David. M. Hoffman*
David M. Hoffman