# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, § § *Plaintiff*, § § v. § § D-LINK CORPORATION, § § *Defendant*. § § § | Civil Action No. 4:19-cv-764 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is D-Link Corporation's Rule 12(b)(2) Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (Dkt. #20). After consideration, the Court finds that the motion should be **DENIED**.

## BACKGROUND

### I. Factual Summary

This is a suit for patent infringement brought by American Patents LLC ("American Patents") against D-Link Corporation ("D-Link Corp.").

American Patents is a Texas limited liability company that owns the four patents-in-suit-here: U.S. Patent Nos. 6,847,803 ("the '803 Patent"); 7,088,782 ("the '782 Patent"); 7,310,304 ("the '304 Patent"); and 7,706,458 ("the '458 Patent"). D-Link Corp. is a Taiwanese corporation with a principal place of business in Taipei, Taiwan. American Patents alleges that D-Link Corp. has committed and continues to commit acts of patent infringement in the State of Texas by "making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas,

including by Internet sales and sales via retail and wholesale stores" (Dkt. #17). Those devices generally include wi-fi routers and extenders and internet-connected IP cameras.

Specifically, the products at issue in this case, as identified in the first amended complaint, include the "D-Link Wireless AC1200 MU-MIMO Wi-Fi Gigabit Router family of products that include 802.11ac and/or LTE capabilities," which allegedly incorporate the technologies described in the '782, '304, and '458 Patents; and the "D-Link AC3200 Ultra Wi-Fi Modem Router family of products, that include 802.11ac beamforming capabilities," which allegedly incorporate the technologies described in the '803 Patent.

D-Link Systems, a California corporation, is a wholly owned subsidiary of D-Link Corp. D-Link Systems is in the business of selling D-Link brand products in the United States. D-Link International Pte. Ltd. ("D-Link International") is a wholly owned subsidiary of D-Link Corp. and another subsidiary, D-Link Holding, and is in the business of "marketing, purchase, and after sales service" and is identified as the "Shipper" on most of the D-Link Corp. products shipped into the United States from 2013–2020 (Dkt. #23 at p. 6; Dkt. #23, Exhibit C).

## II.     Procedural History

On March 3, 2020, D-Link filed the present motion to dismiss (Dkt. #20). On March 18, 2020, American Patents filed a response (Dkt. #23). On April 1, 2020, D-Link filed a reply (Dkt. #31). On April 16, 2020, American Patents filed a sur-reply (Dkt. #35).

## LEGAL STANDARD

### I.     12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to

establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if the court holds an evidentiary hearing on the question of personal jurisdiction, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese-Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir.

1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established certain minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992)). However, only in an "exceptional case" could a plaintiff assert general jurisdiction over a party in a forum outside of its domicile, place of incorporation, or principal place of business. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (citations and quotation omitted). Finding general jurisdiction where an individual or company is outside of its domicile, place of incorporation, or principal place of business requires a showing of a defendant's substantial, continuous, and systematic contact with the forum. *See Johnston*, 523 F.3d at 609. And "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts

4

are insufficient to support general jurisdiction." *Id.* at 610 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[T]he court must separately consider specific jurisdiction for each claim that arises from different forum contacts." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 198 n.16 (5th Cir. 2019) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*. Rather, the specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation and quotations omitted). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (quoting

5

*Goodyear*, 564 U.S. at 919). Further, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (alteration in original) (quoting *Walden*, 571 U.S. at 286).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King Corp.*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## ANALYSIS

D-Link Corp. asks the Court to dismiss this case for lack of personal jurisdiction. American Patents' position is that specific personal jurisdiction is proper under a stream of commerce theory. Specifically, it argues that D-Link Corp.—whether itself or through a subsidiary—places its products into an international supply chain, knowing that the United States, including Texas, is the likely destination of its products. For the reasons stated below, the Court agrees with American Patents and is of the opinion that, at this stage, American Patents has made a prima facie case for personal jurisdiction over D-Link Corp.

I.  **Personal Jurisdiction—Stream of Commerce**[1]

The Supreme Court has held generally that the stream of commerce theory provides a valid basis for establishing minimum contacts. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98 (1980). "The forum does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id.*

The Federal Circuit, whose personal jurisdiction jurisprudence binds this Court in patent-related cases, has also upheld the exercise of personal jurisdiction premised on a stream of commerce theory. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994); *see also Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-483, 2019 WL 2084426, at *3 (E.D. Tex. May 13, 2019) (citing *Celegard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015)) ("Federal Circuit law governs personal jurisdiction where a patent question exists.") (internal quotations omitted). In *Beverly Hills Fan*, the Federal Circuit applied the stream of commerce theory and held that all the requisites for specific jurisdiction were present: "defendants, acting in consort, placed the accused [products] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566.

Turning to the present facts, the parties seem to disagree as to just about every material fact related to D-Link Corp.'s business. In support of its motion to dismiss, D-Link Corp. provides the

---

[1] The Court will note briefly that American Patents devotes only one-and-a-half pages, of its twenty-five page response, to advancing an argument for personal jurisdiction based on an agency theory. While this is a recognized theory of personal jurisdiction, *see, e.g.*, *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015), it is not fully briefed here. The overwhelming majority of American Patents' briefing focuses on the stream of commerce theory, so that it what the Court addresses here.

sworn affidavit of Deborah Lin ("Lin Affidavit"), the director of its legal department. In the Lin Affidavit, Ms. Lin testifies as to the following:

> 3. D-Link [Corp.] sells products domestically in Taiwan only and does not sell any products to the United States or any other foreign countries.
>
> 4. D. Link [Corp.] does not manufacture any of its products. D-Link [Corp.] purchases the products from third-party vendors and manufacturers in Asia who make D-Link brand products and then sell the purchased products domestically in Taiwan.
>
> 5. The products at issue in the subject litigation . . . are not made, sold, exported, imported or distributed by D-Link [Corp.]. D-Link [Corp.] does not own and has never held title to any such products sold or imported into the U.S.
>
> 7. The sales of D-Link [Corp.] branded products in the U.S. are handled by D-Link Systems. D-Link [Corp.] does not manufacture any of the products that D-Link Systems sells in the United States. D-Link Systems selects its own products for purchases from vendors or manufacturers other than D-Link [Corp.]. D-Link Systems does not purchase the products it sells from D-Link [Corp.] and has not purchased goods from D-Link [Corp.] since May 2006.
>
> 8. D-Link Systems is a separate, distinct, and independent business that makes its own corporate decisions. D-Link [Corp.] does not control or decide what products D-Link Systems sells in the United States, what features D-Link Systems' products have, or how D-Link Systems advertises the products D-Link Systems chooses to sell in the United States.
>
> 11. D-Link [Corp.] does not ship any goods to D-Link Systems or any other person or entity in the United States. D-Link [Corp.] has not sold, shipped, or exported any goods to D-Link Systems or any other person or entity in the United States for sale in the United States since May 2006 and has not shipped goods to D-Link Systems or any other person or entity in the United States since 2008.

(Dkt. #20, Exhibit 1).

At one point or another in its response and supporting evidence, American Patents purports to contradict nearly all of the above statements from the Lin Affidavit. First, American Patents provides D-Link Corp.'s 2018 Annual Report, which indicates that D-Link Corp. uses a wholly owned subsidiary—D-Link International—to ship some of the accused products to D-Link Systems, who

8

then is responsible for selling D-Link branded products in the United States and in Texas. Thus, American Patents argues that D-Link Corp. *is* part of a distribution chain resulting in sales of the accused products in the United States and Texas. Moreover, American Patents provides at least some evidence suggesting that D-Link Corp. *is* a manufacturer of some of the accused products. Specifically, it provides documents that D-Link Corp. submitted to the Federal Communications Commission ("FCC") to obtain product approvals that expressly identify D-Link Corp. as the manufacturer of certain accused products. *See* (Dkt. #23 pp. 4–5); *see also* (Dkt. #23, Exhibits F, G).

So, there is clearly a dispute both about whether D-Link Corp. is involved in the manufacturing of the accused products and about D-Link Corp.'s precise role in the distribution chain that ends in sales of the accused products in the United States and in Texas. At this stage, the Court resolves material conflicts "in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992). And the evidence suggests that, even if not the manufacturer of the accused products, D-Link Corp. at the very least has some level of control over the accused products' placement into the stream of commerce that ends in sales in the United States and in Texas.

In this way, the present case is similar to this Court's previous decision in *Largan Precision Co., Ltd. v. Ability Opto-Electronics Tech. Co., Ltd*. *See* No. 4:19-cv-696, 2020 WL 569815 (E.D. Tex. Feb. 5, 2020). In *Largan*, the Court held that personal jurisdiction under a stream of commerce theory was proper over a Taiwanese company that "place[d] its products in the stream of commerce that beg[an] in Asia and end[ed] in the United States and in Texas, [and that intended and desired] for its products to be sold [there]." *Id.* at *7. That the defendant there was the manufacturer of the accused products was not what drove the Court's decision that personal jurisdiction was proper. Rather, the critical factor was the defendant's intentional placement of the accused products into the

9

stream of commerce flowing from Asia to the United States and Texas. *Id.* at *8. The defendant, even without ultimate control of the "specific details of transactions that occur[ed] downstream in the distribution channel," knew or reasonably should have known that, by placing its products into the stream of commerce, its products were being distributed, marketed, and sold in the forum state. *Id.* On that basis, the Court found that the plaintiff had made a prima facie showing in support of personal jurisdiction over the foreign defendant. *Id.* at *7.

Here, too, American Patents has made a prima facie case supporting jurisdiction under a stream of commerce theory. First, the evidence presented by American Patents indicates that D-Link Corp. has a more-than-minimal role in placing the accused products into the stream of commerce that ends in sales of those products in the United States and Texas. Resolving genuine conflicts in the allegations and evidence in favor of American Patents at this juncture, the evidence suggests that D-Link Corp. plays a role in furnishing the accused products to D-Link International, which then coordinates with D-Link Systems to have those products distributed and sold in the United States, including in Texas. At worst, there is a genuine factual dispute as to the extent of American Patents' involvement in the distribution chain, and for now the Court must resolve that dispute in American Patents' favor.

D-Link Corp. counters this by arguing that it does not manufacture any of the accused products and thus is not even a part of the stream of commerce that ends with sales of the accused products in the United States and Texas. To be sure, it is far from clear from the evidence whether D-Link Corp. itself manufactures any of the accused products. But that D-Link Corp. may not have itself manufactured the accused products is beside the point. "[I]t cannot be that nonmanufacturing [parent corporations] categorically lie beyond the stream of commerce no matter the nature of their contributions." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d

753, 779 (5th Cir. 2018). It is enough, for a prima facie case, that D-Link Corp. appears to have had a role in orchestrating—through its wholly owned subsidiary—the accused products' *placement* in the stream of commerce.

Second, there is evidence that D-Link Corp. seeks out the United States market for sales of the accused products. Product packaging and documentation for some of the accused products is apparently labeled with D-Link Corp. copyrights,[2] as are United States and Texas case studies from D-Link's website—many of which highlight the use of D-Link Corp.'s products in Texas. *See* (Dkt. #23). This is sufficient evidence, at this stage, that D-Link Corp.—even if through a subsidiary—places its products into the stream of commerce with the intent that they be made available for sale in the United States and in Texas. Ultimately, D-Link Corp. markets itself as a corporation with global reach and takes actions—whether itself or through its subsidiaries—to make its products available in the United States and in Texas, and it cannot now pretend that it is not involved in the process of selling its products in the United States and in Texas simply to avoid suit there. American Patents has presented sufficient evidence to make a prima facie case that "D-Link made or had made D-Link-brand accused products and placed them into a distribution chain in which they would be shipped to D-Link's U.S. subsidiary, expecting that those products would be sold to consumers at national retail chains throughout the United States," including in Texas(Dkt. #23 at p. 14).

---

[2] Even if, as D-Link Corp. claims, D-Link Systems is also listed as a copyright holder on some of the documentation for the accused products, this does not take away from the fact that D-Link Corp. is too and has an intellectual property interest in the accused products that are sold in Texas.

11

**II.     Traditional Notions of Fair Play and Substantial Justice**

Finally, D-Link Corp. argues that the exercise of personal jurisdiction here, even if otherwise proper based on a stream of commerce theory, would nevertheless be unreasonable and "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*, 326 U.S. at 316. The Court disagrees. To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *See Asahi*, 480 U.S. at 113. A consideration of these factors in this case reveals the reasonableness of this Court's assertion of jurisdiction over D-Link Corp.

Where, as here, minimum contacts are established, a nonresident defendant must make a "compelling case" against the exercise of personal jurisdiction. *See Wien Air Alaska*, 195 F.3d at 215 (citing *Burger King*, 471 U.S. at 477). The gravamen of D-Link Corp.'s argument is that it would bear a significant burden in time, expense, and inconvenience if forced to litigate against American Patents in Texas because it is incorporated and operates "over 7,700 miles from the federal district courts in the Eastern District of Texas" (Dkt. #20). But courts in this district have considered and rejected similar distance-related objections to the reasonableness of personal jurisdiction. For example, in *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, the Court explained:

> Since 1957, dramatic advances in transportation and communication technology have only further lessened the burden on foreign defendants, such as daily international commercial flights, express delivery services, fax machines, the Internet, teleconferencing, and videoconferencing. The same technology that facilitates Weida conducting business with customers in eighty countries equally facilitates its ability to defend itself from claims of patent infringement in countries where its products arrive.

*See* No. 2:05-cv-185, 2005 WL 3299718, at *9 (E.D. Tex. Dec. 5, 2005). Absent some further showing by D-Link Corp., the Court does not see how, given that D-Link Corp. could have reasonably foreseen being subjected to suit in the United States and in Texas, exercising jurisdiction would be manifestly unreasonable and unfair.

D-Link Corp. also argues that American Patents' interest in obtaining relief in Texas is not compelling because the evidence pertaining to the technology incorporated into the accused products "was likely generated in Georgia or Finland, not Texas" (Dkt. #20). The Court is equally unpersuaded by this argument. "The State of Texas has a strong interest in preventing patent infringement within its borders." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009) (citing *Beverly Hills Fan*, 21 F.3d at 1568). Moreover, Texas has an interest in advancing scientific progress and development, which patent laws promote. *Id.* Therefore, as this case involves alleged patent infringement in Texas, Texas has a sufficient interest in this litigation.

Similarly, American Patents has an interest in obtaining relief in Texas. Indeed, patent infringement allegedly occurred, and is potentially still occurring, in Texas. American Patents thus has a significant interest in recovering the damages it sustained from sales of any infringing products in Texas.

Finally, the parties do not dispute the last two reasonableness factors, so the Court will not analyze them. It is sufficient simply to say that, on the whole, "this is not one of the rare cases where exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. . . . Texas's interests are not so attenuated that they are clearly outweighed by any burden [D-Link Corp.] would suffer by having to defend this case in Texas, rather than [elsewhere]." *ATEN*, 261 F.R.D. at 120.

## CONCLUSION

For the foregoing reasons, D-Link Corporation's Rule 12(b)(2) Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (Dkt. #20) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 14th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE